Good morning. I am Lou Loss, Counsel for Appellant Dennis' Insurance Company. This appeal presents important issues about the operation of claims-made insurance policies and the significant distinctions between claims-made insurance policies and occurrence-type insurance policies. This court, courts in California and courts across the country have resisted efforts such as that advanced here by Appellee Magma to blur the distinction between claims-made policies and occurrence policies and we urge the same result here. The important distinction is what triggers coverage under a claims-made policy as compared to an occurrence policy. Claims-made policies are basically reporting policies. Coverage is triggered by a claim being made against the insured during the policy period and then that claim being promptly reported to the insurer so that at the end of the policy period, the insurer knows the risks that it is facing under that policy and the court's many decisions have recognized the social utility of that type of policy and the advantages for consumers in terms of the setting of premiums and so forth. That type of policy is to be contrasted with an occurrence-type policy in which the event that triggers coverage is the occurrence of a wrongful act which may give rise to a claim many years down the road in the most egregious or most extreme examples that I'm familiar with. For example, in the asbestos area where workers were exposed to asbestos maybe in World War II 40, 50 years ago, because of the slow rate at which the diseases flowing from that manifest themselves, claims could be asserted decades later and the occurrence-type policies that were in place at the time the worker was exposed end up being implicated by those types of claims. So the claims-made policy is designed to minimize the long tail for unexpected claims and that has social utility. Now, this case involves an effort by the insured, MAGMA, to obtain coverage under an expired claims-made policy issued by Genesis for a securities fraud case that was filed well after the expiration of the Genesis insurance policy. The primary basis on which they assert their entitlement to coverage under the expired policy is under what's known as the Notice of Circumstances provision under the Genesis policy. Notice of Circumstances provisions are common in claims-made policies and what they recognize is that in addition to claims that are actually made against insureds during the claims-made period, there are instances where an insured gains such a sufficiently precise level of notice of that to a claims-made carrier during the policy period and if that identified claim comes to pass even after the expiration of the policy period, that claim will be deemed made during the period when the notice was given. This does not do violence to the basic notion of claims-made policies because of the level of specificity that is required in the notice to the insurer so that when they close the books on that policy, in addition to any actual claims, they have a particular potential claim of which they have received notice. That varies based on the policy provision. There can be minor variations. There are minor variations from policy to policy, but they all, in my experience, largely try to accomplish the same thing and the cases have been vigilant in strictly enforcing those reporting requirements so as not to do violence to the provision. If the policy just said notice of circumstances has to be given, then it could be more general in terms of what notice is given. But in this particular case, the policy had specific information that had to be included in the notice of circumstances. Unusually specific information, even among this class of policies. And what MAGMA's position in this case seems to be is that all they had to do during the policy period was send in a lawsuit as a claim and then also say in the cover letter, please also accept this as a notice of circumstances, and then their view is that what that does is that any claim that ever arises that has any relationship to that claim during the policy period then relates back. That does great violence to the basic operation of a claims-made insurance policy and it's for that reason that we've resisted it here. Do I understand that in this particular case, the initial claim or initial lawsuit that was filed, everybody agrees it was uncovered by either Genesis or the underlying insurance carrier, correct? That's correct. And as I understand Genesis' position, you were an excess carrier in the first place. Correct. So the underlying carrier at the beginning of this patent infringement lawsuit said we don't cover that. Correct. And your policy was to cover the officers and directors as an excess liability carrier. You said we don't cover that either. End of story. Six months later, a year later, whatever it was, a securities lawsuit comes up and they now say, hey, by the way, the same allegations being made in that first lawsuit are being made here now in the second one and you've got to cover it. Is that essentially what's going on? That's the basic chronology. The one point I would refine slightly is that they weren't the same allegations. The common element was that the patents that were at issue in the patent infringement lawsuit were also mentioned in the securities fraud lawsuit, but the claimants were very different. You had a competitor who was the claimant in the patent infringement suit. You had shareholders as the claimants in the post policy securities lawsuit. The wrongful acts alleged in the patent infringement lawsuit were infringement of a patent. The wrongful acts that were central to the securities fraud lawsuit were alleged fraudulent misrepresentations and omissions to shareholders and the damages were very different. In the patent infringement lawsuit, the damages were alleged to be royalties or the types of damages that are allowable under the patent laws as opposed to investor losses, which were the claim damages in the securities lawsuit. So when you look at the particular pieces of information that are especially required in the notice of potential claim provision in the policy, they were all different, you know, between the first lawsuit and the second lawsuit. Don't you also claim that some of the acts complained of occurred after the policy? That's correct. That's correct. The class period at issue in the securities fraud lawsuit extended months beyond the expiration of the genesis policy period. And significantly and interestingly, the event that prompted the filing of the securities fraud lawsuit was not the mere filing of the patent infringement action, but rather post the genesis policy period, it became public knowledge that a scientist at Magma had in an affidavit allegedly conceded a lot of the allegations in the patent infringement lawsuit. That all happened after the expiration of the genesis policy and certainly genesis was in no position to anticipate that there would be those future events. Now, Magma does not really contest that it didn't provide all of the specific information required by 15C, which is the notice of circumstances provision in its notice, or they didn't provide it in a way that described the securities fraud lawsuit that ultimately came about. So instead, they have advanced a variety of other theories to try to shift, in effect, the process to operate there. They advance waiver arguments. They advance duty to investigate arguments. And I would simply say that those types of arguments have been routinely rejected by this court in California Union Insurance Company versus American Diversified Savings Bank and by the California appellate courts in particular in the KPFF versus California Union case. The courts have really resisted shifting the burden of this type of reporting requirement to the insurer. Finally, there's another argument that Magma has advanced that the district court did not expressly rule on, but which is equally without merit. And that is the argument that a related claims provision in the underlying executive risk policy, it was in both policy years, somehow operates as a functional equivalent of another notice of potential claim provision. And that is their argument is that they get to the same place by virtue of that provision because if there was any relationship between the securities fraud lawsuit and the patent infringement lawsuit, the claim moves back to the genesis policy period. That argument is without merit. The Homestead case, a leading California case, has expressly said that the related claims provision is subordinate to the claims made provision so that since genesis wasn't on the risk at the time the securities fraud lawsuit was made, you don't, there's no provision to look at in a genesis policy to say it will then relate back to the earlier policy period. So that argument has been rejected. That, the district court didn't. The court did not expressly rule on it. If you could describe to us where you think the district court went wrong. The district court went wrong in two respects. First, it mischaracterized genesis' position as saying that the submission of the patent infringement action was inherently defective. Genesis accepted it for what it was worth and reserved the right to deny coverage for any future claim as to which it hadn't received adequate notice. And then the fact of the matter is when the securities lawsuit came in and all of those factors which I enumerated earlier were different, they concluded they hadn't received adequate notice. Second, the district court applied a very loose test of whether there was any relationship between the securities fraud lawsuit and the patent infringement lawsuit without referring back to the very specific requirements of the reporting provision. So the district court, in effect, did precisely what I noted at the outset, would do great violence to the basic operation of a claims-made policy. Thank you. I'll reserve the balance of my time. Thank you. Good morning, Your Honors. Dennis Cusack for MAGMA Design Automation. Judge Ware observed below that the foundation to his decision was that either Genesis or National Union will provide coverage in this case. MAGMA and National Union, and I think Executive Risk, agree that coverage in this case ought to fall to Genesis, and MAGMA has been left to make that case. Okay. So you're representing MAGMA. MAGMA, the policyholder. Okay. You don't dispute that the original claim was not covered under the policy? We do not dispute that. Okay. This case presents a couple of very unique facts which drove the district court's decision. The first is that we have three different insurance companies spread over two years, but the policy language in their policies is identical because it was all written by Executive Risk. The second point is that Executive Risk, the primary carrier, with no dog in this fight, looked at the policy, looked at the same facts, the infringement action, and the subsequent securities action, and concluded that the earlier policy year, Executive Risk and Genesis above, applies to this case given the notice of circumstances provisions in its policy. That's kind of curious to me because the notice of circumstances provision is very specific in terms of the information that needs to be provided in order to give adequate notice. And let me answer that by saying yes, it does prescribe specific information that it wants. And so there are two questions here. One is, did we give them that information? If we didn't, was it within Genesis' power to pick up the phone and call us and say, can you give us what's missing? And to answer that question. Well, the larger question is whether they had a duty to do that. Whether they had the power is not determined. The issue is whether they had the obligation. And California law says they do have the duty. KPFF and other cases say that constructive notice, the duty to investigate. That's for claim for coverage disputes. But what case says that for notice of circumstances situations? KPFF is a notice of circumstance case. KPFF says constructive notice and the duty to investigate, which are both grounded in California in the implied covenant of good faith and fair dealing, apply in a notice of circumstance case. And then I'm not sure. language in KPFF that applies that premise in the notice of circumstances context. Let's see if I can find that here very quickly. I mean, you don't have to use your time. If you don't, I thought since you quoted it, you would know where it was offhand. But if you don't, I don't want you to waste your time looking for it. It is in the KPFF case. KPFF does say both of those principles apply. Why in the world would somebody do a further investigation about a claim that everybody agrees they don't have to cover? Because we specifically told Genesis and Executive Risk. Specifically? Yes. All right. Two levels, two substitutions. Look and say to Genesis. This is a notice of circumstance. We're telling you that a subsequent claim covered by the director's and officer's liability policy may follow. Now, Executive Risk took that infringement action complaint, an experienced claims manager, presumably applying common sense, their experience, and acting in good faith, said yes, we accept this as a notice of circumstance. We're not going to cover it, by the way. We're not going to cover it. But we acknowledge that a covered director's and officer's liability claim may be coming down the road. And when the shareholder suit did come down the road, Executive Risk had no trouble saying yes, this, in fact, arises out of the same circumstances that you warned us about with the infringement action. Isn't Executive Risk basically doing an accounting maneuver for their own purposes? They want to put in the first policy rather than the second policy for their own accounting purposes. Isn't that what they're doing? There's absolutely nothing in the record to support that. I just asked the question. You don't have that? I have no idea. And Executive Risk has their position is, and there is nothing in the record to suggest otherwise, that they did nothing other than look at their policy, look at the facts, and try and apply it in good faith to do right by their insured. I think it's important to step back here and look at what purpose the notice of circumstance provision serves in a claims-made context. Genesis suggests it's all about being able to predict what claims are coming. The notice of circumstance provision specifically is intended to address a gap in coverage that would otherwise occur if it didn't exist, because if the insured, like MAGMA, knows that there's trouble growing, there may be a claim coming, but no claim has actually been asserted yet, it has nothing to report to its current claims-made carrier in order to get coverage. But when it goes to apply for coverage next year, that carrier, assuming MAGMA discloses it as it should, is going to say, we're not going to cover you at all, or we're not going to cover that claim. And if it doesn't disclose it, it's going to be subject to a rescission argument. That knowledge then suddenly creates an uncovered claim under the structure of claims-made policies. The notice of circumstance provision is there to benefit the insured. And so it is a little difficult to conclude under those circumstances that the carrier providing this notice of circumstance provision to prevent a gap in coverage is then going to say, because you didn't technically comply with these specific items in the notice, which were easily inferrable, Chubb understood, Executive Risk understood, you're going to lose coverage for this case. In fact, Insurance Code 553 says we're not going to allow that kind of forfeiture. It is, and as the Eliano case says, that provision is based on California public policy that we will not allow a forfeiture of coverage under an insurance policy based on technical omissions. But, counsel, the difficulty I'm having with your approach is under KPFF, the Court recognizes that claims-made policies are limited coverage. I mean, they're not to be expanded. And so I have some difficulty with accepting your argument that, you know, coverage should be broader. We don't the claims-made policy and the structure of the notice of circumstance provision, as I said, is to prevent this claim, this set of circumstances that everybody knows is going to ripen or everybody knows is quite possible. Well, that's the question. Well, the policy, the notice of circumstance provision only requires that there be a potential for this claim. It doesn't require the insured to predict the future with any certainty. Okay. You've more than used your eight minutes. I apologize. Thank you, Your Honor. All right. Good morning, Your Honors. Your Honors. Glenn Friedman for National Union Fire Insurance Company of Pittsburgh, Pennsylvania. May it please the Court. I think the fundamental dispute that's come here from National Union's perspective Wait a minute. You represent who? National Union. National Union. Fire Insurance Company of Pittsburgh, PA. And let me just say, for clarification of the record, firemen's, not firemen's, National Union. Too many insurance companies. Too many insurance, that's it. And it's getting too close to the lunch hour. Under the circumstances that are presented before us here, National Union provided the first layer, excess coverage in the second year, in the year in which the securities action and the derivative action were actually filed. There was, as alluded to earlier, consistent primary carrier to which the Genesis and National Union policies followed form, i.e., the executive risk policy. What we have here, the fundamental dispute that involves National Union, is the idea that it's one year or the other. The idea that if it isn't going to be in the initial year, the 03-04 year, in which Genesis provided the first layer excess, then automatically, ifso facto, there is coverage in the 04-06 policy. Now, the district court didn't decide that issue, right? That's exactly right. And let me just focus on it in that perspective. After there was full argument, full briefing on this issue, which were the result of cross motions for partial summary judgment, filed by both Genesis and National Union. The district court's ruling was that there was properly, in the district court's opinion, coverage in the initial year, i.e., the Genesis year. And as a consequence, there was not coverage in the National Union year, and basically stopped the inquiry there. The court specifically found that there was no ripeness as to any other positions which were the subject of the National Union motion. The National Union motion, generally speaking, was based on two points. One, no exhaustion. You can't get to the National Union excess layer unless there has been exhaustion of the executive risk policy, right? And that couldn't happen anyway because executive risk and magma and the court had placed it in the first year. And the second issue that was the subject of the National Union motion was the prior notice exclusion. This is an exclusion that's contained in exclusion 6A, which is part of the executive risk policy. And the National Union policy follows form to that. As part of his ruling, the lower court never addressed the application of the prior notice exclusion. It's distinct from the notice of circumstances. This is exclusionary in nature. And that exclusion basically finds that there is no responsibility in the second year. And this was alluded to earlier by Magna's counsel, that the company shall not be liable for loss on account of any claim based upon, arising from, or in consequence of any facts, circumstance, situation, transaction, or wrongful act that before the inception date was the subject of any notice given under any policy or coverage section of which this section is a direct or indirect renewal or replacement. So the next... All you want to say is that if we send the case back and say Genesis wins, that doesn't mean that you lose. Pardon me? If we send the case back and say Genesis wins on their argument, that doesn't necessarily mean that you lose. Exactly, Your Honor. Our position here is, and I'm kind of dealing with this at an interesting viewpoint because generally speaking, appellate courts don't consider issues unless they're both raised and resolved, considered by the court below. I think you have sufficient information that was in the record that you could probably deal with that here. But I think the information that's true is that our fundamental disagreement with the positions that are set forth is that if you go ahead and make a determination that the Genesis year is implicated, that it is not automatically, if so factored, that it's in the national union year that follows because there has to be an independent coverage determination made as to the terms, conditions, exclusions, and exceptions to coverage of our year. And I don't know if you would like to hear any other argument on that issue. But the insured may wind up. Pardon me? So does that mean the insured winds up? Well, under those circumstances, Your Honor, that raises an issue. And we put that into our brief. There is an issue here that it kind of puts national union in an untenable position, that if there's a question as to the sufficiency of the notice of circumstance, that's not something that should be put at the doorstep of national union. In fact, national union is kind of an issue position also, and this was alluded to earlier in oral argument. National union comes into this risk with no knowledge of the fact that a notice of circumstance was made previously. We don't know about that. And the prior notice exclusion on its face doesn't refer to the fact that there had to be a notice of circumstance. It just related to the fact that there had to be a notice. And in the pleadings below, both in the underlying actions and in this coverage case, there was constant positions put forth by MAGMA that the items that were the subject of the securities case and that were the subject of the derivative case ultimately arose from the same set of facts which were set forth in the patent infringement case. So you're looking at things from a different perspective. Okay. Okay. We've got another attorney to hear from, and you're going to waste your time. Thank you, Your Honor. Good morning, Your Honor. Terrence McGinnis on behalf of Executive Risk Indemnity. Executive risk position is somewhat neutral on this appeal. We know that there's coverage here. We know that we owe $10 million, which we pay under our primary policy. We know it falls under one policy or the other. Based on our analysis and the information we have, we place it under the first policy period. But we've always recognized there was a dispute over that. And so we really asked the district court to give us some guidance. And, in fact, we filed a counterclaim in this action in the district court to request a declaration as to the applicable policy. And the court has given us that guidance. So unless there's any particular questions you have for me, I'll just defer the rest of my time to MAGMA to complete any additional questions. So you don't really care of what you're going to put it in? You're going to pay $10 million either way? We've paid the money either way. It's just a matter of. Well, you wrote the provisions, though. Yes, we did. So do you agree with MAGMA that the purpose of the notice was to protect the insured? Well, the purpose of the notice is to allow an insured to give notice of circumstances that have not yet given rise to an actual claim. Because there is a situation, as MAGMA noted, where if they are aware of circumstances, the later carrier may not provide coverage for it. So this policy allows them to provide notice of specific circumstances to protect their potential for coverage. But the notice of circumstances provisions was very detailed, and all that was given was a complaint with a couple of sentences. So your client was of the view that that met the policy provisions? Well, I think the record also reflects that the broker did contact Executive Risk and provide some additional information. There was a declaration submitted by Richard Nace, who is my client's claims handler, said that the broker contacted them and explained to them why they thought this was a potential circumstance. And based on all of that information, Executive Risk agreed to treat this as a notice of circumstance and deemed the securities claim as falling under this policy. But that information wasn't given to Genesis. I'm not privy to what was or wasn't given to Genesis. I don't believe in the record it shows what was given to Genesis. I'll be very brief, unless the Court has any questions. First, to answer the question that arose at the end there, that information was not provided to Genesis. And importantly, as counsel stated, the broker called Executive Risk.  It's not that the broker launched Genesis. And on that topic, Judge Rawlinson, you were asking about KPFF and the pertinent part of the provision of the decision. I'll just refer the Court to the second-to-last paragraph of that decision. In particular, the Court says, but the appellant's, as the insurer's, interpretation of these concepts, meaning the duty to investigate and the concept of constructive notice, would transform the limited coverage which the parties bargained for into something much broader and more ill-defined. The insurer's duty of investigation under a claims-made policy should be confirmed to matters necessary for the proper handling of claims. Right. That's why I asked him the question, because I was unsure as to how he interpreted that language. Thank you. Are there any further questions? No. There don't appear to be any. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. All rise.
judges: Collins, Schroeder, Rawlinson